## No. 12,276.

PURE SPRINGS WATER SUPPLY COMPANY *v.* TOWN OF
OLNEY SPRINGS, ET AL.

(288 Pac. 631)

Decided May 12, 1930. Rehearing denied June 2, 1930.

Mr. E. F. CHAMBERS, Mr. JOHN H. VOORHEES, for plaintiff in error.

Mr. FRED A. SABIN, for defendants in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE plaintiff private corporation became such under the laws of the state in 1906. The purpose of its incorporation was to develop a supply of pure water for domestic and other uses and to distribute the same by pipe lines for use by municipalities and others. To this end plaintiff became the owner of certain tracts of land and springs in section 34 of the township. In the development of spring waters plaintiff constructed underground subways, pipe lines, gathering basins, and underground tile lines, and thereby, as it says, developed upon these lands a flow of water of not less than 6,000 gallons per day, and from this development has supplied water to the defendant, the town of Olney Springs, and its inhabitants and to other municipalities and other consumers of water. After the plaintiff had thus made such development of water the defendant town of Olney Springs, in the summer of 1926 or 1927, acquired a small tract of land near to the tracts of land of the plaintiff and in the same section, and constructed deep cuts and galleries with the view of developing a water supply for the town and in the process of such development the defendant town, as plaintiff alleges, entered upon the water-bearing stratum, which, it is said, is the source of supply to the water of the springs of plaintiff in section 34, and in part cut off the supply of water thereto, and during August and September of 1927, diverted the water through its pipe lines and water galleries, by reason of which development the flow of water in plaintiff's springs was cut off and diminished about one-half. Plaintiff alleges that unless the town is restrained by the court, it will connect up its pipe lines in the town to the water supply pipes which defendant has constructed and thereby deprive plaintiff of its water and of its vested rights in the water from its said springs, called Graham Springs, consisting of what is referred to in the record as the Big Spring and the Little Spring, and that unless the defendant town is prevented by order of the court,

it will proceed so to divert and use water to the destruction of the plaintiff's water rights and to its great loss.

The defendant town admits that in the summer of 1926, not in the summer of 1927, it purchased land in section 34 and constructed certain works which were designed to develop water lying under the surface of the lands thus acquired for its use. It denies that in doing so it entered upon water-bearing strata which was the source of supply of the water of the plaintiff's springs. In effect, the answer denies the important and controlling allegations of the complaint. The answer further alleges that the water supply of the plaintiff will not be affected by any act which the town has done or which it will do in the development of its own water for the supply of the inhabitants of the town, or that such development will materially, or at all, diminish the flow of water in plaintiff's springs, or in any manner destroy or injure the plaintiff's property. The answer further sets forth that the land which defendant town acquired in section 34 has been utilized by it and upon the same it has constructed a system of water development and discovered thereon a supply of water and proposes to use the same; that said waters are percolating waters and constitute a part of the soil itself which it owns and that the town will limit its use of the waters so developed to a reasonable use and will not draw off more than its share of the waters percolating under the surface of its own soil.

Such, in brief, are the allegations of the complaint and answer as summarized by the trial court at the close of the evidence produced by both parties. The court did not make specific findings of fact upon the issue of percolating waters tendered by the defendant's answer. The court summarized its views, which have been reproduced and which are brought up in the abstract of the record. They are designated in the abstract as the opinion of the court. The court itself, in this statement or opinion, says: "The sole issue is, as I conceive it, has the town of Olney Springs entered upon the water-bearing stratum

of supply to the springs of the plaintiff, in section 34, and in part cut off the supply of water thereto, as shown in August and September, 1927, by diverting water belonging to plaintiff by means of the development of the town's pipe lines and water galleries?''

In their briefs counsel for plaintiff emphasize the fact that this so-called opinion is in no sense a finding of facts by the court, and, therefore, the statement constituting, as they say, merely an opinion of the court does not rise to the dignity or have the effect of a finding of facts. This contention in effect is, more or less, a play upon words and it does not clearly appear that the court itself designated this statement as an opinion, although the record entry of the clerk of the court so designates it. Irrespective of the title of this document and whether it is an opinion merely, or a blending of an opinion with findings of fact, the trial court specifically says therein: ''In my judgment, and from the view I take of the evidence, it is not established that there is any interference or interception of water belonging to plaintiff by reason of the development of the town tunnel.'' In the record immediately following this entry is the entry of another document or paper signed by the trial judge in which is the recital that: ''This cause having heretofore come on for hearing to the court upon application of plaintiff for permanent injunction and the court having heard the evidence of the parties and arguments of counsel and the said cause having been submitted and taken under advisement by the court, and the court now being fully advised in the premises, finds the issues herein joined in favor of the defendants and against the plaintiff and doth deny said application for injunction. To which findings the plaintiff duly excepts.''

Possibly we refer at unnecessary length to the contention of the plaintiff that the court's decree denying the application for permanent injunction, which was the only relief sought, is not based upon any findings of fact by the court. The record and the decree suf-

ficiently disclose that the court not only intended to, but did, find the vital issues of fact in favor of the defendants, and that the decree denying injunctive relief was based upon the court's findings. If they are sustained by the evidence this writ of error fails of its purpose.

The discussion has taken a wide range by both parties. Counsel for the defendants makes a strong and persuasive argument in support of their contention that the waters which the town developed, and has by pipe lines diverted and carried to its inhabitants for domestic and other uses, are percolating waters in the soil of its own lands. Plaintiff's counsel maintain that the evidence they produced proves that such waters which constitute the supply, not only of the Graham Springs, but also of the Dean Spring of the defendant, are the waters which flow in a well defined channel beneath the surface of the lands, and, therefore, are the waters of an underground stream which, so far as the question of appropriation thereof is concerned, are subject to the same laws as are the flowing waters of a natural stream flowing upon the surface.

Interesting as this question of percolating waters is, and important as it might be under a different state of facts, we think the trial court acted wisely in not determining it. We shall pursue the same course and not assume to determine this issue tendered by the defendants in their answer, and our reason for this is that a diligent and attentive study of this record convinces us that the trial court was abundantly justified in its findings of fact upon the controlling and vital issue in the case which was and is: ''Has the town of Olney Springs, in developing its own water supply, entered upon the water-bearing stratum of supply to the springs of the plaintiff, and in part cut off the supply of water thereto by diverting the same to the town's pipe lines and water galleries?'' The trial court, in its statement or opinion and in its findings of fact, has, we think, clearly shown that its findings of fact find ample support in this record. Much stress is laid by plaintiff's counsel upon the ad-

mitted fact that after the town had, as above stated, developed its water supply and carried the same through pipe lines to the inhabitants of the town, there was a diminution in the flow of the waters from the Graham Springs which constituted the source of supply of the plaintiff. The defendants concede that there was for a time a diminution in the flow, but they say that such diminution in the flow of the waters of the Graham Springs was not coincident with the development and flow of the Dean Spring, the waters of which were diverted and carried by the defendants to supply its inhabitants. It is in evidence, and the court evidently was influenced by it, that before any development work of the defendants was instituted there had been from time to time diminution in the flow of the Graham Springs, which are the source of the supply of the plaintiff company. For example, in the preceding year of 1926, which was before the inception of the development work by the defendants, there was a greater diminution in the flow of the Graham Springs than occurred in the year 1927, after the defendants began to use the water which they had collected. And there is further evidence that the flow of the plaintiff's Graham Springs was not, and had not always been, constant, but diminished or increased from time to time from unknown causes wholly disassociated from, and in no wise connected with, the development work of the defendants. There is also evidence in the record that as early as the year 1925, two years before the development work of the defendants begun, the flow of plaintiff's Graham Springs had declined to a point where it was a matter of concern. There is further evidence that at one time the water from the town tunnel was cut off, and following this there was no increase in the flow of the Graham Springs into the plaintiff's pipe lines. Other unknown or undiscovered influences the expert witnesses of the defendants say caused, or may have caused, this diminution in the flow of the springs in that vicinity. It is true that the expert witnesses of the

plaintiff were of the opinion that the development work of the defendants was the cause of the diminution in the flow of plaintiff's Graham Springs. But it is equally true that the expert witnesses of the defendants were of opinion that defendant town's development tunnel and the flow of the defendants' water through the same did not cause this diminution in the flow of the Graham Springs of the plaintiff.

There is another circumstance which tends strongly to support the trial court's findings of fact. There are two wells known as Mock Well No. 1 and Mock Well No. 2 situate between the Graham Springs development and the town tunnel, Well No. 1 being 165 feet south of the west end of the town tunnel, and Well No. 2 being 120 feet further south and 40 feet east of Well No. 1. The defendants say, and the record bears them out, that observations at these wells, which have been in existence for some years, which were made between May, 1927, and June, 1928, by witnesses who testified in behalf of the defendants, show that during that whole period the water level remained practically constant, the greatest variation being not to exceed 2½ inches. About the same distance north of the town tunnel that the Mock Well No. 1 is south thereof, is another well called the Old Well. Observations were also taken at this well by witnesses for the defendants, and it was found that there was a variation in its water level corresponding with the use of the town tunnel; that there was a diminution when water was taken out of the tunnel, and that the water filled itself back to its original level when diversions from the tunnel were discontinued. Because of the respective locations of these three wells with reference to the location of plaintiff's Graham Springs, it is not disputed; in fact, it is virtually admitted, that the defendants' evidence bearing on the same, as above outlined, tends to prove the contention of the defendants that the zone of influence of the town tunnel upon the water level of Graham Springs is negligible. The tests, so the wit-

nesses of the defendants say, were sufficiently long and carefully conducted to enable them to determine, as they did, that Mock Well No. 1, which, if there is any difference in their location, is closer to the town tunnel than the Old Well, was not within the zone of influence of the tunnel. Indeed, the result of these tests is not disputed by the plaintiff, but its counsel seek to explain it away by evidence which the trial court held insufficient. The trial court, however, evidently believed, and placed greater reliance upon, the evidence of witnesses, both expert and lay, of the defendants, than it did upon those of the plaintiff. Certainly, and that is sufficient for the purposes of our decision, we cannot say that the findings of fact by the court were not sustained by the more convincing evidence. The judgment, therefore, should be, and it is, affirmed in its entirety.